JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, James C. Janosek ("Husband"), appeals from various aspects of the judgment entry and decree of divorce entered by the Court of Common Pleas, Division of Domestic Relations. For the reasons set forth below, we affirm in part, reverse in part and remand for further proceedings.
 {¶ 2} Husband and plaintiff-appellee, Sandra Janosek ("Wife"), were married on May 21, 1977. Four children were born as issue of the marriage: Melissa (emancipated), Bryan (emancipated), Jay (emancipated), and Jeffrey born January 17, 1988 (now emancipated). Throughout the course of the marriage, the parties accumulated a large marital estate comprised of several businesses, several homes, and other marital assets.
 {¶ 3} On June 10, 2002, Wife filed for divorce. The court issued a temporary support order obligating Husband to pay child support of $3,000 per month and temporary spousal support of $12,000 per month. The court awarded Wife interim attorney fees and expenses of $25,000 on January 23, 2003 and $46,325.06 on October 23, 2003. A contested divorce trial was held for 27 days from January 7, 2005 through April 15, 2005. At the end of the trial, the judge asked both parties to prepare proposed findings of fact and conclusions of law. On May 20, 2005, Wife filed a notice of submission of proposed judgment entry of divorce with findings of fact and conclusions of law. On May 24, 2005, Husband filed his proposed findings of fact and conclusions of law.
 {¶ 4} On June 13, 2005, the trial judge held an unscheduled attorney conference where he announced the terms of his judgment. He asked Wife's counsel to prepare the judgment entry. The judgment entry was delivered to the trial court. Wife's counsel claims to have served his proposed judgment entry by mail to Husband's counsel on June 16, 2005. On June 20, 2005, prior to the completion of the trial transcript and four days prior to Husband's deadline for responding, the trial court entered Wife's judgment entry without modification. On June 20, 2005, Husband filed a motion to strike, indicating that his counsel was never served with a copy of the proposed judgment entry. On June 22, 2005, Husband filed a motion to vacate the judgment entry and a motion to stay enforcement. On June 23 and 24, 2005, Husband filed his objections and supplemental objections to Wife's judgment entry. On July 20, 2005, the trial court overruled Husband's motion to vacate and objections to Wife's judgment entry.
 {¶ 5} On July 20, 2005, the trial court stayed execution subject to the posting of a $9,000,000 bond. The stay did not apply to the award of spousal support or attorney fees. On July 26, 2005, Husband filed a notice of appeal from the judgment entry. On August 12, 2005, this Court granted Husband's emergency motion to reduce the appeal bond and to stay further execution on property awarded to him upon the posting of a $5,000,000 bond. On August 19, 2005, Husband posted the bond.
 {¶ 6} It is from many of these orders that Husband now appeals and raises 20 assignments of error, some of which will be addressed out of order and together where appropriate.
 {¶ 7} "III. The trial court erred and abused its discretion by ordering Mr. Janosek to secure appellee's spousal support by a $2 million life insurance policy because his spousal support obligation terminates upon his death."
 {¶ 8} In the divorce decree, the trial court made the following order:
 {¶ 9} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, in order toeffectuate the division of property as set forth above, the defendant shall secure a life insurance policy with a death benefit in the amount of $2,000,000, and therein designating the plaintiff as the beneficiary of said policy. This policy shall be in effect until the Courtterminates the defendant's spousal support obligation. The defendant shall provide bi-yearly documentation and proof of said policy to the plaintiff." (Emphasis supplied.)
 {¶ 10} A trial court may not secure a spousal support order with life insurance, unless the order specifically states that the spousal support continues after the death of the obligor. Waller v. Waller (2005),163 Ohio App.3d 303, 323; Robiner v. Robiner (Dec. 7, 1995), Cuyahoga App. No. 67195. Here, Husband's spousal support obligation terminates on the death of either party. [1]
 {¶ 11} Wife argues, citing the language from the aforementioned judgment entry, that the life insurance policy was not ordered to secure husband's spousal support obligation, but rather to secure the entire division of property, which is permissible pursuant to McCoy v.McCoy (1993), 91 Ohio App.3d 570; Nori v. Nori (1989),58 Ohio App.3d 69; Gore v. Gore (1985), 27 Ohio App.3d 141.
 {¶ 12} Wife's reliance on these cases is misplaced. In each of these cases, it is clear from the orders therein that the life insurance policies were ordered only to secure the division of the marital property. Here, despite the language to the contrary, it is clear that the life insurance was ordered to secure spousal support. Specifically, the life insurance guarantee does not terminate upon payment of the property division. Rather, it terminates upon the termination of the spousal support award. Accordingly, the trial court's order regarding Husband's life insurance policy is vacated.
 {¶ 13} Assignment of Error III is sustained.
 {¶ 14} "IV. The trial court erred and abused its discretion in double counting JJJ, Inc.'s value both as part of Mr. Janosek's ownership interest in Welded Ring Properties and as an asset owned by him.
 {¶ 15} "V. The trial court erred and abused its discretion by including the Cape Coral, Florida properties in both the value of Welded Ring Products Co. and as additional pieces of property awarded to Mr. Janosek in its marital property division.
 {¶ 16} "VI. The trial court erred and abused its discretion by including the Old Florida Golf Club and Firestone Country Club memberships in both the value of Welded Ring Products Co. and as additional pieces of property awarded to Mr. Janosek in its marital property division.
 {¶ 17} "VII. The trial court erred and abused its discretion in valuing Welded Ring Properties Co. based on a possible value in 2007 if several hundred thousand dollars were invested in the properties and occupancy rates were increased from 65% to 80% and without considering its current liabilities."
 {¶ 18} In these assignments of error, Husband challenges the trial court's valuation of the marital estate.
 {¶ 19} We review a trial court's determination of the value of marital property for an abuse of discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131. An abuse of discretion connotes more than an error in judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 20} With this principal in mind, we address Husband's various assignments of error.
JJJ, Inc.
 {¶ 21} In the divorce decree, the trial court made the following finding of fact with regard to the valuation of Properties and JJJ, Inc.:
 {¶ 22} "The Court finds that [Husband's] ownership interest in Properties is 93.34% (34.5% + 58.84%) as the [Husband] owns 100% of JJJ, Inc * * *."
 {¶ 23} "* * * [Husband] has a 100% ownership interest in JJJ, Inc. Mr. Greenwald indicated that JJJ, Inc. manages the property and real estate owned by [Properties], which is leased to [Products]. JJJ, Inc. has a 58.4% general partnership interest in [Properties] and charges a management fee of $192,000 per year for its services. This $192,000 payment is for the sole benefit of [Husband.]
 {¶ 24} "Mr. Greenwald testified that the total assets of JJJ, Inc. are $1,162.378, which consists primarily of cash. Mr. Greenwald testified that the fair market value of [Husband's] 100% ownership interest in JJJ, Inc. is $1,100,000. [Husband] failed to offer any evidence or expert testimony to rebut this valuation.
 {¶ 25} "[Wife] is entitled to an award in the amount of $4,000,000 * * * in consideration of [Wife's] marital interest in * * * Properties, JJJ, Inc.
 {¶ 26} "[Husband] shall receive as his individual property his ownership interest in JJJ, Inc."
 {¶ 27} Husband argues that the trial court erred in awarding Wife money to offset the award of Properties and JJJ, Inc. to Husband because virtually all of JJJ, Inc.'s value is derived from its 58.84% ownership in Properties.
 {¶ 28} Wife claims that the trial court did not "double count" the value of JJJ, Inc. because Mr. Greenwald determined a fair market value of JJJ, Inc. apart from Properties and that the assets of JJJ, Inc. are $1,162,378, which consist primarily of cash.
 {¶ 29} At trial, Mr. Greenwald specifically testified that JJJ, Inc. has only two primary assets: a small amount of cash, and the balance being its ownership interest in Properties.[2] Thus, contrary to the Wife's assertion, the record indicates that the total assets of JJJ, Inc. do not consist primarily of cash.
 {¶ 30} As noted by Wife, there was no testimony offered to rebut the valuation and testimony of Mr. Greenwald as to the valuation of JJJ, Inc. Since Wife's expert agreed that JJJ, Inc.'s primary asset is it's ownership of Properties, and not cash, the trial court erred in awarding the full value of JJJ, Inc. (with a value of $1,162,378) to Husband as additional marital property that was distinct from his interest in Properties. This portion of the judgment entry is therefore vacated.
 {¶ 31} Assignment of Error IV is sustained.
Cape Coral Properties
 {¶ 32} In the divorce decree, the trial court made the following finding of fact with regard to the Cape Coral Properties (collectively referred to as "Cape Coral"):
 {¶ 33} "The testimony at trial indicated that the parties own property in Cape Coral, Florida the value of which is $300,000. The real estate/vacant lots in Cape Coral, Florida, shall be awarded to [Husband], and the [Husband] shall pay the amount of $150,000 to the [Wife] for her marital interest in the lots."[3]
 {¶ 34} Husband argues that the trial court erred in awarding Wife a $150,000 cash payment to offset the award of Cape Coral to Husband because Cape Coral was a business asset of Products and, in fact, was included in the valuation of Products performed by Wife's expert. Husband claims that Cape Coral cannot be both personal property of the parties subject to division and a business asset of Products.
 {¶ 35} Wife claims that the trial court did not "double count" the value of Cape Coral because Mr. Greenwald did not include the value of Cape Coral in his valuation of Products.
 {¶ 36} At trial, Mr. Greenwald specifically testified that he did include the value of Cape Coral into his valuation of Products. (See Tr. pp. 1520, L. 20-25; pp. 1521, L. 1-12; pp. 1526-27, L. 20-1.) Thus, contrary to Wife's assertion, the record clearly shows the valuation of Products did include the Cape Coral properties.
 {¶ 37} As noted by Wife, there was no testimony offered to rebut the valuation and testimony of Mr. Greenwald. Accordingly, Cape Coral was properly included as an asset of Products and should not also have been included as a personal asset of the marital property that was subject to marital division. Thus, the trial court erred in awarding the Cape Coral properties to Husband as additional marital property that was distinct from his interest in Products and ordering Husband to make a $150,000 cash payment to Wife to offset this award. This portion of the judgment entry is therefore vacated.
 {¶ 38} Assignment of Error V is sustained.
Golf Club Memberships (Assignment of Error VI)
 {¶ 39} In the divorce decree, the trial court made the following findings of fact with regard to the golf club memberships:
 {¶ 40} "The evidence and testimony of [Husband] indicated that he used marital funds to purchase the Old Florida Golf Club in the amount of $150,000 and the Firestone Country Club in the amount of $10,000.
 {¶ 41} "The Court finds that [Husband] shall keep as his individual property [these] country club memberships."[4]
 {¶ 42} Similar to above, Husband argues that the trial court erred in including the golf club memberships as part of the marital estate subject to division, since the memberships were a business asset of Products and, in fact, were already included in the valuation of Products. Husband claims that the golf club memberships cannot be both personal property of the parties subject to division and a business asset of Products.
 {¶ 43} Wife makes the same response as in the previous assignment of error: that the trial court did not "double count" the value of the golf club memberships because Mr. Greenwald did not include the value of these memberships into his valuation of Products.
 {¶ 44} At trial, Mr. Greenwald specifically testified that he did include the value of the Old Florida Golf Club and Firestone Country Club memberships in his valuation of Products. (See Tr. pp. 1520, L. 20-25; pp. 1521, L. 1-12; pp. 1526-27, L. 20-1.) Thus, contrary to the Wife's assertion, the record shows the valuation of Products did include these golf club memberships.
 {¶ 45} Again, we note that there was no testimony offered to rebut the valuation and testimony of Mr. Greenwald. Accordingly, the Old Florida Golf Club and Firestone Country Club memberships were properly included as assets of Products and should not also have been included as personal assets of the marital property that were subject to marital division. Thus, the trial court erred in awarding the Old Florida Golf Club and Firestone Country Club memberships (with a value of $160,000) to Husband as additional marital property that was distinct from his interest in Products. This portion of the judgment entry is therefore vacated.
 {¶ 46} Assignment of Error VI is sustained.
Welded Rings Properties Valuation (Assignment of Error VII)
 {¶ 47} In the divorce decree, the trial court made the following finding of fact with regard to the valuation of Welded Ring Properties:
 {¶ 48} "The [Wife's] commercial real estate appraiser, Dwight A. Kumler, MAI, testified as to the appraisal performed of the commercial and industrial property owned by the Defendant, Welded Ring Properties. Mr. Kumler valued the property at $4,500,000. This testimony was uncontroverted. [Husband] failed to offer any evidence or expert testimony to rebut this valuation."
 {¶ 49} Husband contends that the trial court erred in assessing the value of Properties at $4,500,000 as the evidence presented to the court did not support this value.
 {¶ 50} At trial, Mr. Kumler testified that he employed two methods to determine the value of Properties: (1) the sales comparison approach — which comes to a value conclusion based upon other comparable facilities and (2) the income approach — which comes to a value conclusion based on what type of rental income the property is capable of and what a prudent investor might pay for that type of investment. Mr. Kumler testified that both methods are generally accepted in the industry and that he did not find one method to be more reliable than the other.[5] However, he testified that a reconciliation must take place following the valuations to evaluate what conclusions were made for what type of approach and what should be weighed more heavily.[6]
 {¶ 51} Under the sales comparison approach, Mr. Kumler opined that the "as is" value (as of April 1, 2004)[7] of Properties real estate was $3,750,000. Under the income approach, Mr. Kumler opined that Properties real estate could have an "as stabilized" value in three years[8], i.e., approximately April 2007, of $4,500,000 if Husband made improvements and the occupancy rate increased from 60% to 80%. (Emphasis supplied). At the close of this testimony, Mr. Kumler was asked what "reconciliation and final value conclusion" "weighed more heavily." Mr. Kumler clearly responded that he concluded the value of Properties was $3,750,000.[9]
 {¶ 52} Accordingly, contrary to the trial court's finding of fact, the record indicates that the value of Properties was not "uncontroverted" at $4,500,000. Indeed, the transcript shows that Mr. Kumler, the only expert to testify at trial, controverted this testimony and, in fact, indicated that the $3,750,000 value of Properties should have been given more weight.[10]
 {¶ 53} Although the trial court is neither required to use a particular method nor precluded from using any method when valuing a marital asset, a valuation of assets should generally be based on the present value of the asset. See Berish v. Berish (1982),69 Ohio St.2d 318. See, also, Herron v. Herron, Allen App. No. 1-04-23, 2004-Ohio-5765
(when determining the value of a corporation for the purpose of a property division in a divorce, the trial court must determine the corporation's fair market value).
 {¶ 54} Here, the present "as is" value of Properties was found to be $3,750,000. The "as stabilized" value of $4,500,000 was a "future" value of the asset, and a purely speculative one at that. Under the circumstances presented in this case, we conclude that the court's acceptance of the "as stabilized" valuation of Properties at $4,500,000 was an abuse of discretion, since it was based upon several contingencies that might occur in a three-year period in the future. Accordingly, the trial court should have assessed the value of Properties at its present value of $3,750,000.
 {¶ 55} Husband also argues that the trial court erred in accepting Mr. Kumler's valuation of Properties because his valuation failed to take into account nearly $1,000,000 in debts of Properties.
 {¶ 56} At trial, Husband did not introduce his own expert testimony regarding the value of Properties. Moreover, he did not object to Mr. Kumler's testimony regarding the sales comparison ("as is") value of Properties, which did not include any debts of Properties.[11] In the absence of an objection to the admission of evidence at trial, all but plain error is waived. State v. Jones (2001), 91 Ohio St.3d 335,2001-Ohio-57. In the civil context, the plain error doctrine applies only when an error by the trial court "seriously affects the basic fairness, integrity, or public reputation of the judicial process."Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122-123, 1997-Ohio-401.
 {¶ 57} Here, we find no plain error in Mr. Kumler's "as is" valuation of Properties at $3,750,000. Although, Mr. Kumler testified that his valuation of Properties did not take into account any debt of Properties, he also stated that his valuation would not have been affected.[12] Mr. Kumler testified that he is a state licensed general appraiser with a MAI designation and over 18 years of experience in the field. This is a sufficient foundation for his opinion.
 {¶ 58} Accordingly, the court's finding regarding the valuation of Welded Ring Properties at $4,500,000 is vacated and the matter is remanded for modification or correction of the entry consistent with this opinion.
 {¶ 59} Assignment of Error VII is sustained.
 {¶ 60} "VIII. The trial court erred and abused its discretion by making Mr. Janosek guarantee the value of the Westlake residence."
 {¶ 61} On March 11, 2005, Husband and Wife entered into an agreed judgment entry requiring both parties to "agree to the purchase price and terms of listing" the Westlake residence and stating that both of them "may participate in any open houses or showing" of the residence.[13]
 {¶ 62} However, in the divorce decree, the Westlake residence was valued at $1,900,000, ordered to be "immediately listed and sold,"[14]
giving Wife the "sole discretion to set the purchase price and accept all offers for sale,"[15] and awarding Wife all of the "net sale proceeds."[16] The divorce decree also ordered Husband to pay Wife any difference between $1,900,000 and the actual sale proceeds.
 {¶ 63} Husband claims the trial court erred in fixing the value of the Westlake residence at $1.9 million, ordering it to be immediately sold, and requiring Husband to pay the difference between this value and the net sale proceeds. Wife claims that the trial court properly ordered the house to be sold immediately because Husband refused to sign a listing agreement or cooperate in the listing and sale of the property.
 {¶ 64} The trial court is vested with broad discretion in determining what constitutes an equitable property division. Walker v. Walker
(1996), 112 Ohio App.3d 90, 93. Here, the record demonstrates that the parties were very acrimonious with each other during the proceedings. Accordingly, we do not find that the trial court erred when it ordered the immediate sale of the house. See Young v. Young, Wayne App. No. C.A. 04CA0057, 2005-Ohio-2392. Moreover, we do not find that the trial court erred in valuing the Westlake residence at $1,900,000. At trial, Wife's expert appraised the home at $1,900,000. Husband's expert appraised the home at $2,200,000. Testimony at trial showed that the residence is unique, needed substantial upgrades, and due to the luxury housing market, may have been on the market for a long time. Accordingly, we do not find that the trial court erred in accepting the $1,900,000 valuation of the property.
 {¶ 65} However, we do find that the trial court erred in ordering Husband to pay the deficiency between the actual sale price and the $1,900,000 valuation. By requiring Husband to pay the entire deficiency, the trial court's intent to equitably distribute the assets is defeated. As written, the guarantee provision provides Wife with a windfall, i.e., Husband's share is decreased while Wife's is not.
 {¶ 66} In his appellate brief, Husband claims that the Westlake residence sold for $1,500,000. Under the terms of the divorce decree, Husband would be required to pay Wife $400,000. If these numbers are, in fact, correct, in order to maintain an equal marital property division, Husband should only be required to provide Wife with $200,000, not $400,000.
 {¶ 67} Accordingly, we vacate the portion of the order requiring Husband to pay the entire deficiency of the valuation of the Westlake residence at $1,900,000 and the net sale proceeds. This matter is therefore remanded for proceedings consistent with this opinion.
 {¶ 68} Assignment of Error VIII is sustained.
 {¶ 69} "IX. The trial court erred and abused its discretion by failing to properly account for the membership shares of the Janoseks' children in Janoland, LLC in awarding assets of Janoland, LLC to appellee."
 {¶ 70} On May 11, 2006, Husband withdrew his ninth assignment of error. Accordingly, Assignment of Error IX is moot.
 {¶ 71} "X. The trial court erred in determining the life insurance polices owned by the irrevocable MBJJ Trust were marital property."
 {¶ 72} In the divorce decree, the trial court found that there were three life insurance policies owned by the MBJJ Trust with a total value of $93,000. The trial court made the following finding of fact with regard to these policies:
 {¶ 73} "The Court finds that the [Husband] shall receive as his individual property said life insurance policies. The Court finds that all of these accounts are marital property and that [Wife] is entitled to receive ½ of the value in said accounts."
 {¶ 74} Husband argues that the trial court erred in including these life insurance policies as part of the marital estate subject to division, since the cash values of these three policies are owned by the MBJJ Trust in an irrevocable trust for the benefit of their children.
 {¶ 75} A life insurance policy that has a cash value is an asset, and if the cash value was generated by using marital funds (or otherwise is attributable to the marriage), the cash value is a marital asset.Jelen v. Jelen (1993), 86 Ohio App.3d 199, 203; Frost v. Frost (1992),84 Ohio App.3d 699, 713; Babka v. Babka (1992), 83 Ohio App.3d 428, 433. Moreover, property that is paid for with marital funds, but that is titled or held in the name of a third party, may be treated as marital property. Goswami v. Goswami (2003), 152 Ohio App.3d 151.
 {¶ 76} Applying these principles to the case at hand, we find that the trial court did not abuse its discretion in distributing the disputed funds as marital property. Although the MBJJ Trust may be the beneficiary of these three life insurance policies, the cash value of these policies were established by the premiums paid during the marriage and thus represented marital property subject to division.
 {¶ 77} Assignment of Error X is overruled.
 {¶ 78} "XI. The trial court erred and abused its discretion by finding that Mr. Janosek's Circle 6J, LLC bank account contained $140,000 without any basis existing in the record that it contained that amount."
 {¶ 79} In the divorce decree, the trial court made the following order:
 {¶ 80} "In order to make an equitable division of marital property, [Husband] shall pay to the [Wife] the sum of $140,000, which represents the balance of the Circle 6J, LLC bank account as of January 7, 2005."
 {¶ 81} Husband argues that the trial court erred in finding that this account had a balance of $140,000, since the only evidence in the record shows that the account contained $43,588.85 as of December 31, 2004.
 {¶ 82} In making an equitable division of property, a trial court must first determine the value of marital assets. Hightower v.Hightower, Franklin App. No. 02AP-37, 2002-Ohio-5488. An appellate court will uphold a trial court's determination of valuation, which is based upon competent, credible evidence absent a showing of an abuse of discretion. Moro v. Moro (1990), 68 Ohio App.3d 630, 637. R.C. 3105.171, which governs property distribution, expresses no specific way for the trial court to determine value. Focke v. Focke (1992),83 Ohio App.3d 552, 554. An appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value. James v. James (1995),101 Ohio App.3d 668, 681. A trial court must have a rational evidentiary basis for assigning value to marital property. McCoy v. McCoy (1993),91 Ohio App.3d 570, 576-578.
 {¶ 83} In addition, R.C. 3105.171(E)(3) provides that "if a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." A determination on financial misconduct lies in the trial court's sound discretion.Huener v. Huener (1996), 110 Ohio App.3d 322.
 {¶ 84} At trial, Husband testified that he wire transferred $140,000 in marital funds to the Circle 6J, LLC account in September 2002, and that he could not account for how these funds had been dissipated. Tr. 1180-1181.
 {¶ 85} In its judgment entry of divorce, the trial court determined that Husband engaged in financial misconduct and dissipation of the marital assets, including "marital funds concealed and secreted by [Husband] at Bank One."[17]
 {¶ 86} Based on the foregoing, we find that the trial court's finding that Husband committed financial misconduct did not constitute an abuse of discretion. From the record, it is apparent that Husband secreted and dissipated over $100,000 in marital funds leaving the Circle 6J, LLC bank account with a balance of only $43,588.85 as of December 31, 2004. Accordingly, we find that the trial court's decision to list the balance of this account at $140,000 was not arbitrary, unconscionable, or unreasonable.
 {¶ 87} Assignment of Error XI is overruled.
 {¶ 88} "XII. The trial court erred and abused its discretion by finding appellee's Rocky River residence to be separate property.
 {¶ 89} "XIII. The trial court erred by failing to award Mr. Janosek his separate property interest in Products.
 {¶ 90} "XIV. The trial court erred by failing to award Mr. Janosek his separate property interest in Welded Ring Properties.
 {¶ 91} In these assignments of error, Husband argues that the trial court abused its discretion when it designated certain marital and separate property. First, Husband claims that the residence located at No. 9 Astor Place, Rocky River, Ohio constituted marital property and, therefore, the court abused its discretion when it designated it as Wife's separate property. Next, Husband argues that the court abused its discretion when it failed to award him a separate property interest in Welded Ring Products and Welded Ring Properties.
 {¶ 92} R.C. 3105.171(B) mandates the equitable distribution of marital and separate property. Marital Property includes all real and personal property and interest in real and personal property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. Separate property includes property acquired prior to the date of marriage, or through inheritance or gift, or acquired after separation from non-marital funds. The party seeking to establish that an asset is separate property by gifting has the burden to prove the separate property claim by clear and convincing evidence. See R.C. 3105.171(A)(6)(a)(vii).
 {¶ 93} We review a trial court's division of property under an abuse of discretion standard. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131. In doing so, we consider whether the property division, as a whole, was an abuse of discretion. See Briganti v. Briganti (1984),9 Ohio St.3d 220, 222. An abuse of discretion connotes more than an error in judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 94} With this principal in mind, we address Husband's various assignments of error.
The Rocky River Residence (Assignment of Error XII)
 {¶ 95} In the divorce decree, the trial court made the following finding of fact with regard to the Rocky River residence:
 {¶ 96} "[Wife] purchased a new residence in April, 2005 located at No. 9 Astor Place, Rocky River, Ohio 44116 in the amount of $482,500. [Wife] had not received title or possession of this property, as the construction had not been completed. The funds used to place a deposit and down payment for the residence were derived from [Wife's] spousal support. The Court makes the specific finding that there is no marital equity or property interest of [Husband] in this property. [Wife] shall retain the residence located at No. 9 Astor Place, Rocky River, Ohio 44116 as her individual property."
 {¶ 97} Husband contends that the trial court erred in determining that the Rocky River residence is Wife's separate property because it was purchased during the marriage and with marital funds. Husband contends that he received disparate treatment because he also purchased a residence during the pendency of the divorce, which was treated as marital property.
 {¶ 98} We cannot say the trial court erred in determining that the Rocky River residence was Wife's separate property given the fact that it was purchased during the pendency of the divorce, after the parties had separated, and was not even completed at the time of the divorce decree. Testimony at trial demonstrated that Wife did not work outside the home and had no incoming income.[18] Accordingly, the trial court did not abuse its discretion in determining that the $50,000 down payment was made solely with the spousal support payments received by Wife and that these funds constitute non-marital funds and Wife's separate property. Indeed, the record shows that Husband received a credit of $376,617.20 for the spousal support payments he had made during the pendency of the divorce proceedings.[19]
 {¶ 99} Regarding Husband's claim about disparate treatment by the trial court, he makes no citation to the record to support his claim that the trial court improperly designated his residence as marital property. Accordingly, pursuant to App.R. 18, we decline to address this.
 {¶ 100} Assignment of Error XII is overruled.
Welded Ring Products and Properties (Assignment of Error XIII andXIV
 {¶ 101} In the divorce decree, the trial court made the following finding of fact with regard to Welded Ring Products and Properties:
 {¶ 102} "The shares of [Products] and [Properties] that are owned by [Husband] were acquired by [Husband] during the parties' marriage; and that such shares and business interests constitute marital property. [Husband] failed to even reach a preponderance of evidence concerning his separate property claims, much less, clear and convincing evidence."
 {¶ 103} Husband claims that 86 shares of Products, given to him as gifts by his father and mother, constituted exclusive gifts to him and, therefore, constituted his separate property. Husband also argues that 29.2% interest in Properties, given to him as a gifts by his father and mother, constituted exclusive gifts to him and, therefore, constituted his separate property.
 {¶ 104} Our review leads to the conclusion that Husband has failed to prove by clear and convincing evidence that his parents gave the shares in Products and Properties exclusively to him. Husband failed to submit any credible evidence to support any alleged gifting or separate property interest he alleged in Products or Properties. Although Husband and his father both testified that these shares were given as gifts, the trial court made a specific finding that Husband's testimony on these issues were "materially false" and not credible. Indeed, our review of the record supports this finding and indicates that all of the "gifts" of stock were purchased by Husband. Thus, the shares and interest (25.83% in Products and 29.2% in Properties) constituted marital property and, accordingly, the trial court did not abuse its discretion when it determined that Husband was not entitled to a separate interest in Products and Properties and that these companies constituted marital property.
 {¶ 105} Assignments of Error XIII and XIV are overruled.
 {¶ 106} "XV. The trial court erred by ruling that Mr. Janosek would waive the attorney-client privilege by having Attorney Ches Sumpter testify about nonprivileged matters concerning the gifting of interests in Products and Properties to Mr. Janosek."
 {¶ 107} In this assignment of error, Husband argues that the trial court erred in ruling that he would waive his attorney-client privilege concerning Ches Sumpter's ("Mr. Sumpter") representation if Mr. Sumpter testified about tax returns and stock certificates. Mr. Sumpter had served as an attorney for Husband, JW (Husband's father), Products and Properties since the early 1990's. Husband claims that Mr. Sumpter would have testified about non-privileged gift transactions made by his father, which would have lowered the value of the marital estate subject to division because a portion of the entire value of Products would have been his separate property.
 {¶ 108} In Ohio, the attorney-client privilege is governed by R.C.2317.02(A), which provides that an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client." State v. McDermott
(1995), 72 Ohio St.3d 570, 574. Knowledge gained by an attorney, during the attorney-client relationship, which knowledge relates to the services for which he was employed, whether it be by words or merely by observations made by the attorney, falls within the rule relating to privileged communications. Id.
 {¶ 109} Here, the trial court ruled that Mr. Sumpter would be allowed to testify as to his knowledge of tax returns and stock certificates that were allegedly given as gifts by Husband's father. However, the trial court also ruled that Mr. Sumpter would be subject to full cross-examination by opposing counsel, including matters which would have been considered privileged.
 {¶ 110} We do not find that the trial court abused its discretion in so ruling. The court had already firmly rejected the testimony of both Husband and Husband's father with regard to their testimony about the gifting of shares of stock and had also properly excluded gift tax returns, which indicated that the documents may have been doctored. (See Assignments of Error XII, supra and XVI, infra.) The court could rationally have believed that any testimony by Mr. Sumpter would
necessarily touch on matters within the attorney-client privilege to the extent that, were the court not to infer a waiver of the privilege, it would limit the Wife's ability to effectively cross-examine. Specifically, if the court had not deemed the privilege to be waived, Wife would have been denied the right to impeach the witness on a matter that the court had already determined to be of a dubious nature.
 {¶ 111} Although Husband's proffer may have been to non-privileged matters, opposing counsel would have had the right to cross-examine Mr. Sumpter about his knowledge surrounding the circumstances of the alleged "gifting" of stock including the gift tax returns, which were deemed inadmissible. (See Assignment of Error XVI, infra.)
 {¶ 112} Assignment of Error XV is overruled.
 {¶ 113} "XVI. The trial court erred when it excluded the gift tax returns from evidence."
 {¶ 114} Husband argues that the trial court abused its discretion when it refused to admit gift tax returns, which allegedly would have produced evidence that he was gifted shares of stock in 1993 and 1994 in Products. Husband claims this would have lowered the value of the marital estate subject to division because a portion of the entire value of Products would have been his separate property. Wife claims the court did not abuse its discretion regarding this matter because Husband failed to properly authenticate the documents.
 {¶ 115} The admission or exclusion of evidence rests in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order for a document to be admissible, it must satisfy the requirements of authentication. State v. Smith (1989), 63 Ohio App.3d 71, 74. Under R.C. 2317.40, business records are competent evidence "if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." Evid.R. 803(6) also requires that such documents be authenticated by the testimony of the custodian of such records or by another qualified witness.
 {¶ 116} Here, Husband's expert, David Devries, testified that he did not produce the documents in question for trial.[20] He also testified that he had not personally prepared the documents in question.[21] Mr. Devries further agreed that the documents in question were not signed by the donor, dated, or signed by the preparer.[22] Mr. Devries also stated that he did not know if the documents in question had even been filed.[23] Indeed, Mr. Devries admitted that at least one of the documents appeared to be "doctored."[24]
 {¶ 117} The trial court, upon being faced with this situation, exercised its discretion to exclude the gift returns. Under the circumstances, we do not conclude this to be an abuse of discretion.
 {¶ 118} Assignment of Error XVI is overruled.
 {¶ 119} "XVII. The trial court erred and abused its discretion by using a contempt purge order to regulate future conduct and to deny Mr. Janosek his right to appeal the judgment entry.
 {¶ 120} "XVIII. The trial court erred and abused its discretion by making it impossible for Mr. Janosek to post a supersedeas bond without this Court's intervention and ordering Mr. Janosek to pay $680,000 toward the property division or go to jail within four hours."
 {¶ 121} Inasmuch as these assignments of error are interrelated and address the trial court's finding of contempt and purge conditions, they shall be addressed together.
 {¶ 122} In the judgment entry of divorce, Husband was found in contempt for his failure to comply with the Court's prior orders relating to (1) his payment of spousal support and child support, (2) the payment of Wife's car lease payments, and (3) the usage of the parties' Florida condominium. Husband was sentenced to 30 days incarceration unless he timely paid "all financial orders of thisJudgment Entry as set forth herein." (Emphasis added.)
 {¶ 123} Husband argues that this purge order is unreasonable and improperly regulates future conduct, since it requires him to pay the entire amount of the judgment entry, which includes millions of dollars in property division that he is appealing to this Court and of which he was not found in contempt. Husband also argues that this purge order denies him his right to appeal.
 {¶ 124} As an initial matter, we examine whether this assignment of error is moot, given the parties' subsequent agreed judgment entry (dated July 27, 2005) whereby the purge amount was fixed at $680,000 and Husband's actual payment of this amount. In general, an appeal from a contempt charge is moot when a defendant has made payment or otherwise purged the contempt. Marx v. Marx, Cuyahoga App. No. 82021, 2003-Ohio-3526. Such a holding stems from the general rule that the voluntary satisfaction of a judgment strips a party of the right to appeal. Bob Krihwan Pontiac-GMC Truck, Inc. v. Gen. Motors Corp. (2001),145 Ohio App.3d 671, 675.
 {¶ 125} Husband argues that this issue is not moot because he involuntarily entered into the July 27, 2005 agreement and involuntary paid his contempt fine. Specifically, Husband argues that, because the trial court ordered him to make payment in the amount of $680,000 by 4:00 p.m. on the day of the hearing or be incarcerated for 10 days, his compliance was not voluntary, but, rather, under duress. In support of that proposition, Husband relies on our recent opinions in State v.Fortson, Cuyahoga App. No. 79501, 2002-Ohio-1; In re Contempt ofMorris (1996), 110 Ohio App.3d 475, 479. In both of these cases, we concluded that compliance with the trial court's order to pay the fines before leaving the courtroom did not constitute voluntary payments but rather ones where the payments were made under duress.
 {¶ 126} Here, the record demonstrates that Husband signed a judgment entry finding him in contempt of the Divorce Decree and requiring him to pay a purge amount of $680,000 to Wife by 4:00 p.m. or be taken to jailthat very day. (Emphasis supplied.) However, the record also shows that Husband filed an emergency motion to stay with this Courtimmediately following the execution of this document.[25] (Emphasis added.) Clearly, Husband's immediate attempt to stay the execution of this "agreed" order demonstrates that he did not agree to the order. Thus, his payment to Wife of $680,000 was not a voluntary payment such as to cause a waiver of his rights to appeal this issue. See Ibid. Moreover, we find the purge condition ordered by the court was unreasonable. The July 27, 2005 entry ordered Husband to report to jail if he had not complied with the conditions (payment of $680,000) by 4:00 p.m. that day. Thus, the court gave Husband only hours to comply with the purge condition. Although Husband was able to complete a wire transfer within minutes of the deadline, we find the time constraint was unreasonable. See Schuman v. Cranford, Vinton App. No. 02CA571, 2003-Ohio-2117.
 {¶ 127} Because we find that Husband did not voluntarily enter into the "agreed" judgment entry of July 27, 2005 and did not voluntarily pay his contempt purge, we vacate the July 27, 2005 judgment entry and proceed to address Husband's assertion that the original purge condition from the divorce decree was unreasonable. Civil contempt sanctions must allow the contemnor an opportunity to purge himself of the contempt.In re Purola (1991), 73 Ohio App.3d 306, 312. A trial court abuses its discretion when it orders conditions for purging that are unreasonable or impossible for the contemnor to meet. Burchett v. Miller (1997),123 Ohio App.3d 550, 552. Furthermore, while an order may provide for suspension of a jail sentence on condition that the contemnor pay an arrearage, it may not purport to regulate future conduct. Tucker v.Tucker (1983), 10 Ohio App.3d 251, 252.
 {¶ 128} Here, the court's order inappropriately attempts to regulate Husband's future conduct by conditioning suspension of his jail sentence on his complying with all the financial orders set forth in the divorce decree. Had the court's order conditioned the suspended jail sentence on timely payment toward Husband's arrearages, the order would have presented a valid opportunity to purge. See id. Instead, the plain language of the court's order conditions purging on Husband making payments not only towards arrearages, but also current support obligations, of which he has not been found in contempt.
 {¶ 129} Accordingly, we vacate the portion of the order purporting to condition suspension of Husband's jail sentence on his timely payment of anything other than his arrearages on previous support orders issued by the court. This matter is therefore remanded for proceedings consistent with this opinion.
 {¶ 130} Assignment of Error XVII and XVIII are sustained.
 {¶ 131} "XIX. The trial court erred when it ordered Mr. Janosek to pay all of appellee's attorney's fees and expenses."
 {¶ 132} In the judgment entry of divorce, dated June 20, 2005, the trial court ordered Husband to pay Wife's attorney fees in the amount of $330,500.[26]
 {¶ 133} Husband argues that this order is erroneous because (1) Wife has the means to pay her own attorney fees, (2) Wife was able to pay her attorneys throughout the course of the litigation, (3) Wife's attorneys' fee bill fails to comply with Local Rule 21(B), and (4) trial court did not determine what portion of fees were caused by Husband's misconduct.
 {¶ 134} As an initial matter, we examine whether this assignment of error is moot, given the parties subsequent agreed judgment entry (dated July 6, 2005) whereby the attorney fee amount was reduced to $320,000 and Husband's actual payment of this amount. In general, the voluntary satisfaction of a judgment strips a party of the right to appeal.Blodgett v. Blodgett (1990), 49 Ohio St.3d 243.
Husband argues that this issue is not moot for two reasons: (1) the judgment entry dated July 6, 2005 was entered solely to correct a mathematical error in the divorce decree relating to $10,000 in fees that had already been paid to Wife's expert and (2) he did not voluntary pay the $320,000. Specifically, Husband argues that the trial court denied his motion to stay judgment with regard to the imposition of attorney fees.[27] Relying on Blodgett, Husband argues that the satisfaction of a judgment is only voluntary where the appellant had the ability to stay the judgment pending appeal but chose not to do so.
 {¶ 135} Our review of the record demonstrates that Husband attempted, but was denied, the opportunity to stay the attorney fee award pending appeal. Accordingly, Husband had little choice but to pay the award pending appeal or risk being held in contempt and incarcerated by the trial court. See Lash v. Lash (Feb. 22, 2000), Cuyahoga App. Nos. 56155, 56837, 57816 (a defendant may be imprisoned for contempt of court where he fails to pay his attorney fees.) Thus, Husband's payment to Wife of $320,000 was not a voluntary payment such as to cause a waiver of his rights to appeal this issue. See Ibid.
 {¶ 136} Because we find that Husband did not voluntarily pay Wife's attorney fees, we proceed to address Husband's assertion that the award of attorney fees was improper.
 {¶ 137} An award of attorney fees is based on, among other things, necessity, and that necessity is determined by a consideration of the parties' financial situation, including income, assets, and expenses.King v. King (Dec. 13, 2001), Cuyahoga App. No. 79240. An award of attorney fees can be reversed only if the trial court abused its discretion. Birath v. Birath (1988), 53 Ohio App.3d 31. In determining whether to award reasonable attorney fees to a party, the trial court must decide "whether either party will be prevented from fully litigating that party's interest if it does not award reasonable attorney's fees." R.C. 3105.18(H). Fees may only be awarded if the payor spouse has the greater ability to pay. Lee v. Lee (1983),10 Ohio App.3d 113.
 {¶ 138} Here, the record demonstrates that Husband had a greater ability to pay attorney fees than Wife. However, the evidence also shows that Wife received approximately $12 million in marital assets and was not unable to contribute towards her own legal expenses. It is clear from the record that Wife's ability to litigate her rights and to adequately protect her interests were never compromised during the proceedings by any perceived hardship. Indeed, prior to the hearing, Wife had already paid over $150,000 towards her own attorney fees.
 {¶ 139} However, even if a spouse is financially able to pay attorney fees, the court may award attorney fees if the other spouse used delaying tactics to prolong the litigation or otherwise engaged in financial misconduct. Cole v. Cole, Cuyahoga App. Nos. 84319, 84504 84789, 2004-Ohio-6638. Here, we find the Wife is entitled to a portion of her attorney fees because the record is replete with instances of Husband's financial misconduct and delaying tactics. Indeed, the trial court specifically found as such in various portions of the divorce decree.[28] The trial court did not, however, determine what attorney fees were a result of the misconduct of Husband. Accordingly, the award of attorney fees is vacated and the matter remanded for a proper determination consistent with this opinion.
 {¶ 140} Assignment of Error XIX is sustained.
 {¶ 141} "II. The trial court erred by awarding $22,000 per month in spousal support to appellee without a termination date despite the fact that appellee was awarded $12.5 million in property."
 {¶ 142} In the judgment entry of divorce, Husband was ordered to pay spousal support in the amount of $22,000 per month, terminable upon the death of either party, remarriage, or cohabitation.
 {¶ 143} Husband argues that such an award is an abuse of discretion because it did not take into consideration Wife's share of the property division or her ability to support herself, did not set a definite termination date, and was not supported by specific findings of fact.
 {¶ 144} The trial court has significant discretion to award spousal support to one of the parties in a domestic relations proceedings so long as the award is "appropriate and reasonable." Bowen v. Bowen
(1999), 132 Ohio App.3d 616, 626. The trial court's decision will not be reversed by a reviewing court unless the trial court abused its discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude isunreasonable, arbitrary, or unreasonable.
 {¶ 145} Because of our determination that several of the marital assets were improperly valuated (see Assignment of Errors 4, 5, 6, 7, 8, 17, 18, and 19), and that the trial court must reassess its division of the Janosek's marital estate, we find that the issue of spousal support is not yet ripe for review. Spychalski v. Spychalski (1992),80 Ohio App.3d 10. See, also, Burma v. Burma (Sept. 29, 1994), Cuyahoga App. No. 65052 (the reassessment of the marital estate includes the reconsideration of spousal support.)
 {¶ 146} Assignment of Error II is overruled.
 {¶ 147} "I. The trial court erred and abused its discretion by signing without modification the 107-page judgment entry that was drafted by appellee's counsel prior to completion of the transcript, prior to the deadline for appellant's objections, and without verifying the accuracy of the judgment entry or considering Mr. Janosek's objections."
 {¶ 148} In this assignment of error, Husband argues that the trial court erred in adopting Wife's proposed judgment entry, without changes, and without conducting an independent review.
 {¶ 149} A court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law. Adkins v.Adkins (1998), 43 Ohio App.3d 95, citing Paxton v. McGranahan, 25 Ohio B. 352 (1985); State v. Jester, Cuyahoga App. No. 83520, 2004-Ohio-3611, citing State v. Combs (1994), 100 Ohio App.3d 90, 110.
 {¶ 150} Here, our thorough review of the entire record demonstrates that the document submitted by Wife's attorney, and adopted verbatim by the trial court, contains some inaccurate findings and conclusions that are not supported by the record. (See Assignment of Errors 4, 5, 6, 7, 8, 17, 18, and 19). However, since we have already vacated these portions of the trial court's judgment entry, we consider this argument moot for purposes of this opinion. App.R. 12(A)(1)(c).
 {¶ 151} Assignment of Error I is overruled.
 {¶ 152} "XX. The trial court erred by refusing to grant Mr. Janosek a new trial."
 {¶ 153} The granting of a motion for a new trial pursuant to Civ.R. 59 rests within the sound discretion of the trial court and the ruling will not be reversed upon appeal unless there is an abuse of discretion.Verbon v. Pennese (1982), 7 Ohio App.3d 182. In reviewing a trial court's ruling on a motion for a new trial, an appellate court should view the evidence favorably to the trial court's action where the trial court's decision involves questions of fact. Sanders v. Mt. SinaiHospital (1985), 21 Ohio App.3d 249; Ellis v. Jackson (June 9, 1994), Cuyahoga App. No. 65661.
 {¶ 154} Here, Husband argues that he is entitled to a new trial because the judgment entry of divorce, prepared by Wife's attorney, was signed without modification and contains numerous significant legal and factual errors. Specifically, Husband argues that the parties' major assets were valued incorrectly, double counted, or misapplied. However, we have already vacated these portions of the trial court's judgment entry. (See Assignment of Errors 4, 5, 6, 7, 8, 17, 18, and 19). We therefore consider this argument moot for purposes of this opinion. App.R. 12(A)(1)(c).
 {¶ 155} Assignment of Error XX is overruled.
It is ordered that appellant and appellee shall each pay their respective costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court, Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J. and ANTHONY O. CALABRESE, JR., J., CONCUR
[1] See Judgment Entry at 82.
[2] Tr. pp. 1450, L. 1-3.
[3] Journal Entry at 37.
[4] Journal Entry at 38.
[5] Tr. pp. 705, L.18-24.
[6] Tr. pp. 707, L.7-17.
[7] Tr. pp. 698, L.24.
[8] Tr. pp. 705, L.10; Tr. pp. 723, L.3-5.
[9] Tr. pp. 707, L.14-23.
[10] Tr. pp. 707, L.14-23.
[11] Tr. pp. 730, L. 14-22.
[12] Id.
[13] OSJ Vol. 4470 Pg. 0261.
[14] Journal Entry at 84.
[15] Id.
[16] Id.
[17] Journal Entry at 78. See, also, JE at 43-44, 46.
[18] Journal Entry at 58.
[19] Journal Entry at 65.
[20] Tr. pp. 2980, L. 16-21, pp. 2996, L.3-8.
[21] Tr. pp. 2981, L.2-4, pp. 2986, L.10-16.
[22] Tr. pp. 2981, L.21-25, pp. 2982, L.1-6.
[23] Tr. pp. 2982, L. 7-13, pp. 3005, L. 11-19, pp. 3006, L. 8-10.
[24] Tr. pp. 3005, L. 20-23.
[25] In fact, this Court granted Husband's motion to stay at Volume 594, Page 878.
[26] See Divorce Judgment at p. 100.
[27] See July 19, 2005 Journal Entry.
[28] Journal Entry at 78. See, also, JE at 43-44, 46.