JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant Patricia Comella appeals, and appellee Thomas Comella cross-appeals, the trial court's determination of separate property and spousal support in an acrimonious divorce proceeding terminating a marriage filled with tremendous personal tragedy. For the foregoing reasons, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.
 {¶ 2} Thomas Comella (Thomas) commenced the original action by filing a complaint for divorce with restraining orders against Patricia Comella (Patricia) on August 12, 2004. Thomas sought a divorce based on the grounds of extreme cruelty and gross neglect of duty. He also sought the equitable division of marital assets and an order restraining Patricia from effecting any property until the final property distribution by the trial court. The restraining order was granted as requested with only slight modification.
 {¶ 3} On September 10, 2004, Patricia filed an answer and counterclaim, alleging in her counterclaim that the couple had been living separate and apart without cohabitation for more than one year prior to the filing of the counterclaim. She sought a divorce based on this ground. Patricia further alleged that she had separate property, and that the parties were incompatible. Patricia also sought the equitable distribution of marital property, and additionally sought temporary and permanent spousal support. *Page 4 
 {¶ 4} In Thomas's Reply to the Counterclaim, filed September 14, 2004, he admitted the parties had lived separate and apart one year from the filing of the counterclaim and that they were incompatible. He denied that Patricia had separate property.
 {¶ 5} Patricia filed a motion for temporary restraining order on October 21, 2004, seeking an order prohibiting Thomas from making any changes to the parties' insurance policies, which was granted ex parte the same day.
 {¶ 6} On February 23, 2005, Patricia filed a second motion for temporary restraining order. This motion sought to bar Thomas from returning to the marital residence in Highland Heights, Ohio, on the ground that he had been absent for five years. This motion was also granted ex parte the same day, but on the basis that Thomas had been absent for over thirty days.
 {¶ 7} On May 24, 2005, the assigned judge and the parties' attorneys signed an agreed entry, which dissolved the order restraining Thomas from the marital residence and partially modified the restraining order directed to Patricia.
 {¶ 8} On March 8, 2006, Thomas filed a motion requesting the trial court to join Metropolitan Insurance and Annuity Company and Jamestown Life Insurance Companies as new party defendants as the companies had possession *Page 5 
or control of property to which Thomas had a claim. The trial court granted the motion on March 9, 2006.
 {¶ 9} The case was referred by the assigned judge to a magistrate for trial. On May 8, 2006, the magistrate and the attorneys for the parties signed an agreed order that the trial would be held at the marital residence in Highland Heights, where Thomas was residing. The parties agreed to the entry in order to accommodate Thomas's physical limitations, which were the result of injuries sustained in a traffic accident on June 25, 1999.
 {¶ 10} The trial of the case before the magistrate commenced on May 23, 2006, which continued on May 24, 2006, and concluded after a third day of trial held on September 7, 2006. The trial consisted of the testimony of both parties and their youngest daughter, Kathryn.
 {¶ 11} After the trial, the parties filed written closing arguments and reply briefs. On February 4, 2007, the magistrate's decision was filed. The decision recommended granting Thomas a divorce from Patricia on the grounds of "adultery, extreme cruelty and gross neglect of duty." It also included findings of fact and conclusions of law as to the division of the parties' marital property and distribution of assets determined to be the separate property of either Thomas or Patricia. *Page 6 
 {¶ 12} Both Thomas and Patricia filed objections to the magistrate's decision. On August 20, 2007, the assigned judge summarily overruled both parties' objections and ordered counsel for Thomas to prepare a judgment entry based on the magistrate's decision. The judgment entry was prepared, signed by the assigned judge, and journalized on September 12, 2007.
 {¶ 13} On September 25, 2007, Patricia filed a notice of appeal. On November 5, 2007, this court granted Thomas's motion to dismiss the appeal for lack of a final appealable order. In granting the motion, this court determined that, since the trial court's entry did not address the parties' respective claims for attorneys' fees, it was not a final appealable order.
 {¶ 14} The parties agreed to waive their claims for attorneys' fees by agreed judgment entry filed January 24, 2008. The effect of the agreed judgment entry was to make the trial court's September 12, 2007 judgment entry a final appealable order. Patricia filed her timely appeal on January 31, 2008. Thomas filed his timely cross-appeal on February 7, 2008.
 {¶ 15} The following pertinent facts were adduced from the three-day trial.
 {¶ 16} Thomas and Patricia were married in Indiana on September 30, 1982. Two daughters were born of this marriage, Elizabeth and Kathryn, both of whom were emancipated adults at the time of trial. *Page 7 
 {¶ 17} Thomas testified that in November of 1988 the couple decided to move from Indiana to the Cleveland area. Thomas made a career change upon their move to Cleveland. He obtained his insurance license and, eventually, bought two insurance agencies. By 1999, his insurance business was doing well. Patricia, a registered nurse, changed her work schedule from full-time to part-time two months after the parties' marriage, and continued to work as a part-time nurse when the parties moved to Cleveland.
 {¶ 18} The parties purchased a marital home in Highland Heights, Ohio. Thomas became involved in Highland Heights community affairs. He ran for city council in 1993 and was elected and reelected twice, for a total of three two-year terms. During his last term he was elected by council to become council president.
 {¶ 19} In 1999, Thomas was the city council representative for the Homedays[1] Committee in Highland Heights. On June 25, 1999, he was traveling to a costume rental shop on East 185th Street in Cleveland, Ohio, to view costumes for use at the city's Homedays celebration. He was driving from Highland Heights to the shop when he was involved in a terrible accident on Interstate 90 in Wickliffe, Ohio. *Page 8 
 {¶ 20} The Plymouth Voyager Thomas was driving was rear-ended by another vehicle. The force of the impact caused the driver's seat to collapse throwing Thomas to the back of the van, resulting in severe injury. Thomas sustained a fractured vertebrae, other broken bones, and internal injuries. He was life flighted from a local hospital to Metro Health Medical Center (Metro). In addition to all of the serious injuries sustained in the accident, Thomas lost his eyesight during an operation. He was in intensive care for an extended period of time and stayed at Metro from the date of the accident, June 25, 1999 until January 29, 2000.
 {¶ 21} The accident, and subsequent surgeries, rendered Thomas blind, paralyzed, and confined to bed for the rest of his life, necessitating round-the-clock care, seven days a week. The accident destroyed his life and caused both him and his family enormous grief and suffering.
 {¶ 22} As a result of the accident, Thomas and Patricia filed two lawsuits in federal court, each presenting claims for Thomas's injuries and for Patricia's loss of consortium. In the first suit against the Chrysler Corporation (Chrysler lawsuit), the Comellas asserted claims alleging that the driver-side seat of Thomas's vehicle was defective and was the proximate cause of his extensive injuries. In the second suit, (Highland Heights lawsuit) the Comellas sought *Page 9 
insurance coverage under the City of Highland Heights' insurance policies for Thomas's injuries.
 {¶ 23} Settlements were reached in both cases. The Chrysler lawsuit was settled in January of 2001 for $7 million, and the Highland Heights lawsuit was settled in December of 2002, for $6.25 million. Neither settlement apportioned the damages between Thomas's injury claims and Patricia's claim for loss of consortium. Neither settlement apportioned the claims between Thomas's personal injuries and lost marital wages and expenses.
 {¶ 24} After the deduction of attorneys' fees and gifting a portion of the proceeds of each settlement to Elizabeth and Kathryn, $3.7 million of the Chrysler settlement and $3.3 million of the Highland Heights settlement remained. At the time of each settlement, Thomas gifted approximately one-half of the balance of each settlement to Patricia. Thomas and Patricia were then free to invest their respective shares of the settlement proceeds as they saw fit, according to Thomas's trial testimony.
 {¶ 25} The couple's youngest daughter, Kathryn, testified that she was thirteen at the time of her father's accident on June 25, 1999. Kathryn testified that, after the accident, Patricia drove with Kathryn to Metro to visit Thomas three or four times a week during the summer, and once school began, after school. During one of many drives to or from the hospital, Patricia told Kathryn *Page 10 
that she was unhappy. Kathryn testified that Patricia stated at various times during these trips that she was staying in the marriage until Kathryn turned eighteen so as not to "lose" Kathryn or her sister, as they were her primary concern.
 {¶ 26} Patricia was questioned at trial about her statements to Kathryn during their trips to Metro about divorcing Thomas. Patricia testified that, although she had contemplated divorce prior to Thomas's accident, she never acted on the thoughts. She explained that when she discussed her feelings with her thirteen-year-old daughter, Kathryn, during their car trips, she had often just left heated discussion with Thomas. She further testified that she was upset and suffering from depression when she disclosed these thoughts to Kathryn. Patricia stated she never hired a lawyer to represent her in any family law matter during her marriage to Thomas. She testified that she did not hire her lawyer until July of 2004, a month before Thomas filed for divorce.
 {¶ 27} Thomas, at the time of settlement of each lawsuit, directed his attorneys to handle the proceeds in basically the same manner. After attorneys' fees, expenses, and annuities for Elizabeth and Kathryn were deducted from each settlement, the proceeds were to be evenly divided between him and Patricia, as she had told him on various occasions that she would stick with him and take care of him. He testified that Patricia made such statements to him while he was hospitalized at Metro and later when he was confined to a nursing home.
 {¶ 28} Thomas further testified, in response to questioning regarding each settlement, that he would not have made the gifts of one-half of each of the *Page 11 
settlements to Patricia if he had known she was planning to divorce him when Kathryn turned eighteen.
 {¶ 29} Kathryn testified that, in the spring of her senior year of high school, she discerned that her mother was involved with another man. Kathryn testified she and her sister confronted their mother about her relationship with this man in June of 2004.
 {¶ 30} Patricia told Thomas on June 30, 2004, that she was involved with another man and wanted a divorce. Thomas was confined to a nursing home at this time. Thomas told her he did not want a divorce and asked her to reconsider her decision. The next day Patricia returned to the nursing home to tell Thomas that she still wanted the divorce. Patricia testified that she had entered into the extramarital affair in March of 2004.
 {¶ 31} After the parties completed their presentation of evidence regarding marital assets, separate property, employment history, and incomes and earning capacity, the magistrate filed his decision. The trial court, reciting a review of the objections of the parties and of the transcript, summarily adopted the magistrate's decision in its entirety as the final judgment entry.
 {¶ 32} In granting the divorce to Thomas, the trial court adopted the magistrate's decision granting the divorce on grounds of adultery, as he *Page 12 
requested, and rejected the ground that the parties had lived separate and apart for more than a year, as Patricia requested.
 {¶ 33} In its final decree, the trial court adopted the magistrate's determination that Patricia's failure to disclose to Thomas her future intentions to divorce him when Kathryn turned eighteen, as expressed to her daughter Kathryn years before, amounted to fraud. The trial court further adopted the magistrate's determinations that such "fraudulent activity" on the part of Patricia necessitated setting aside what the trial court had previously determined to be two completed inter vivos gifts at the time of their making, namely, Thomas's gifts to Patricia of approximately one-half of the proceeds of each settlement.
 {¶ 34} Patricia's appeals, raising four assignments of error for review.
 ASSIGNMENT OF ERROR ONE
 "THE TRIAL COURT ERRED BY VOIDING GIFTS TO A WIFE BASED UPON THE DOCTRINE OF FRAUD, BECAUSE (A) THE DECISION RELIED SOLELY UPON THE WIFE'S EXPRESSION OF INTENTIONS TO HER 13 YEAR OLD DAUGHTER FOUR YEARS EARLIER; (B) STATEMENTS ABOUT A SPOUSE'S FUTURE INTENTIONS ARE NOT MATERIAL FACTS; AND (C), IT WAS UNREASONABLE FOR THE HUSBAND TO RELY ON SUCH STATEMENTS BASED ON THE HISTORY OF THEIR MARRIAGE AND THE CIRCUMSTANCES AT THE TIME HER STATEMENTS WERE ALLEGEDLY MADE TO HIM."
 {¶ 35} The trial court made the following determinations in the final journal entry challenged by this assignment of error: *Page 13 
 "The Court finds that Defendant Patricia Comella had declared on numerous occasions in the fall of 1999 to the parties' then 13 year old daughter Katie that she was going to divorce Thomas Comella when Katie graduated from high school. The Court further finds that this is an undisputed fact, not denied by Defendant; that Defendant did, however, testify that she did not mean what she had said; and that the Court finds, based upon Defendant's later conduct, that Defendant's denials are self-serving and not credible.
 The Court finds that Defendant's actions in failing to disclose to Plaintiff her future intentions, as expressed to her daughter and others, amounted to fraud; and further finds that all gifts made by Plaintiff to Defendant based on this fraud must be voided.
 The Court finds that the decision by Thomas Comella to gift to Defendant Patricia Comella approximately one-half of the balance of the settlement proceeds from the Chrysler lawsuit was based upon Defendant's failure to disclose her intention not to stay with Plaintiff for the rest of his life and take care of him and, in fact, she had no intention of staying with Plaintiff after the parties' youngest daughter Katie graduated from high school.
 The court further finds that the decision by Thomas Comella to gift Patricia Comella approximately one-half of the balance of the sales proceeds from the Highland Heights lawsuit was based upon the statements of the Defendant who failed to disclose that she planned to divorce the Plaintiff when the parties' youngest child graduated from High School.
 The Court further finds that the gifts of separate property funds by Thomas Comella to Patricia Comella should be set aside because of the fraud committed by Defendant Patricia Comella upon Plaintiff Thomas Comella in failing to disclose to him that she planned to divorce him upon Katie's graduating from High School. ***" *Page 14 
 {¶ 36} The trial court ordered annuities placed in the name of Patricia from the settlement of the Chrysler lawsuit issued through Jamestown Life Insurance Company and from the settlement of the Highland Heights lawsuit issued through the Metropolitan Life Insurance Company, transferred back to Thomas's ownership.
 {¶ 37} Patricia's first assignment of error challenges the trial court's order transferring back to Thomas what it had previously determined to be completed inter vivos gifts and items of Patricia's separate property, based on these determinations.
 {¶ 38} A trial court must initially determine whether property is marital or non-marital when distributing marital property in a divorce proceeding. R.C. 3105.171(B); Spychalski v. Spychalski (1992),80 Ohio App.3d 10, 15; Janosek v. Janosek, Cuyahoga App. Nos. 86771 and 86777,2007-Ohio-68.
 {¶ 39} While a trial court's actual award and distribution of marital property is reviewed under an abuse-of-discretion standard in light of the totality of the circumstances, a specific determination of whether an asset is marital or separate property is based on review of whether the trial court's determination is supported by the manifest weight of the evidence. James v. James (1995), 101 Ohio App.3d 668, 684. However, a threshold issue is always whether the trial court did so correctly as a matter of law. *Page 15 
 {¶ 40} The application of legal standards to a court's findings of fact is reviewable de novo as it presents mixed questions of law and fact. As noted by this court in Shutway v. Shutway (Feb. 10, 2000), Cuyahoga App. No. 76737, "[t]o the extent that the trial court's decision is based upon a question of law, an appellate court reviews the trial court's judgment de novo. The court must essentially determine whether the plaintiff has made out his case by a preponderance of the evidence." Id. at 9. (Internal citations omitted.)
 {¶ 41} This court in Janosek stated the following regarding the issue of whether an asset has been converted to separate property by gifting:
 "R.C. 3105.171(B) mandates the equitable distribution of marital and separate property. Marital property includes all real and personal property and interest in real and personal property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. Separate property includes property acquired prior to the date of marriage, or through inheritance or gift, or acquired after separation from non-marital funds. The party seeking to establish that an asset is separate property by gifting has the burden to prove the separate property claim by clear and convincing evidence. See R.C. 3105.171(A)(6)(a)(vii)." Id at ¶ 92.
 {¶ 42} In McLeod v. McLeod, Lake App. No. 2000-L-197, 2002-Ohio-3710, the court summarized the law regarding the status of gifts made to a married person and stated:
 "An inter vivos gift occurs when the donor executes `an immediate voluntary, gratuitous and irrevocable transfer of property' to the *Page 16 
donee. Smith v. Shafer (1993), 89 Ohio App.3d 181, 183, ***. `The essential elements of an inter vivos gift are as follows: (1) the intent of the donor to make an immediate gift; (2) the delivery of the property to the donee; and (3) the acceptance of the gift by the donee after the donor has relinquished control of the property.' *** Frederick [v. Frederick], 2000 Ohio App. LEXIS 1458, [WL] at 7." McLeod at ¶ 30. (Emphasis in original.)
 {¶ 43} Here, as in McLeod, it is undisputed that inter vivos gifts were made. In the instant case, Thomas made a gift of approximately one-half of the proceeds of each of the Chrysler and Highland Heights settlements to Patricia. There is no question that Thomas intended to transfer one-half interest of the two settlement proceeds as gifts and that he did so without consideration. He delivered the proceeds by directing his attorneys to place them in two annuities issued in Patricia's name. Patricia accepted the annuities at the time of their making as irrevocable gifts.
 {¶ 44} R.C. 3105.171 became effective, January 1, 1991, and governs distribution of spousal gifts in this divorce proceeding. R.C. 3105.171(A)(6)(a) provides in pertinent part as follows:
 "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: *Page 17 
 "* * *
 "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
 {¶ 45} There is an exception to the statutory requirement that the party seeking to establish separate property by gifting must do so by clear and convincing evidence; however, when an inter-spousal gift is involved, "either party may acquire separate property through a gift after the date of the marriage. R.C. 3105.171(A)(6)(a)(vii). That reasonably includes a gift from one spouse to the other. If an inter-spousal gift is proved, the `clear and convincing evidence' requirement of R.C. 3105.171(A)(6)(a)(vii), that it was given to but one of the spouses, does not apply." Williams-Booker v. Booker, Montgomery App. Nos. 21758 and 21767, 2007-Ohio-4717.
 {¶ 46} By operation of R.C. 3105.171(A)(6)(a)(vii), it is clear, as determined by the trial court, that by virtue of inter-spousal gifting from Thomas to Patricia the two completed inter vivos gifts of settlement proceeds became the separate property of Patricia. Property, even property purchased with marital assets, is no longer marital property when given as a gift from one spouse to another. See, Slife v.Slife (Dec. 31, 1987), Franklin App. No. 85AP-701.
 {¶ 47} Patricia's assignment of error also challenges the trial court's conclusion that she committed fraud against Thomas, when the trial court's *Page 18 
decision was entirely devoid of any analysis of the requisite elements of fraud.
 {¶ 48} We must address whether a trial court has authority to set aside what it has previously determined to be completed inter vivos gifts and separate items of property belonging to the donee-spouse, on the ground that the donee-spouse failed to disclose at the time of the gifting all possible future intentions as to staying in the marriage in the days and years to come. Non-disclosure is the determinative issue because, as explained further herein, misrepresentations were not involved. Patricia made no statements to Thomas at the time the two completed gifts of settlement proceeds were made to her by Thomas. The trial court's determinations, as set forth above, imprecisely and incorrectly intermingle concepts of misrepresentation and non-disclosure.
 {¶ 49} The court in Ervin v. Ervin, Adams App. No. 07A822,2006-Ohio-5460, affirmed a trial court's refusal to order a husband to repay a wife for what had been determined to be separate property of the husband, a result of a gift from the wife and distributed pursuant to R.C. 3105.171(D). In so determining, the Ervin court noted the following important distinction regarding inter vivos gifts between spouses: "[T]he longstanding principle of law that property exchanged between a husband and wife without consideration is presumptively a gift, ruling that the presumption does not apply if the exchange occurs prior to *Page 19 
marriage ***." Id., citing Gamble v. Anderson-Gamble, Hancock App. No. 5-04-14, 2004-Ohio-4700, at ¶ 10.
 {¶ 50} The Ervin court further stated "a court generally `shall' disburse a spouse's separate property to that spouse, absent certain exceptions or findings. R.C. 3105.171(D)."
 {¶ 51} R.C. 3105.171(D) states as follows:
 "(D) Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse."
 {¶ 52} The above-cited statutory language provides that the only exceptions to the mandatory distribution of separate property to the owning spouse is if it is "otherwise provided in division (E) of this section [R.C. 3105.171(E)] or by another provision of this section [R.C. 3105.171(D)]." The only other provision contained in R.C. 3105.171(D) states that: "If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse."
 {¶ 53} The conduct of Patricia of which Thomas complains is not argued to constitute "financial misconduct" as set forth in R.C. 3105.171(E), nor do we find *Page 20 
it to be so. The question presented herein is whether the "factors" set forth by the trial court in its decision constitute sufficient reason to set aside completed gifts of separate property as a matter of law.Shutway at 9.
 {¶ 54} This court stated in Powers v. Pinkerton, Inc., Cuyahoga App. No. 76333, 2001-Ohio-4119, at 25-26:
 "As a general rule, fraudulent misrepresentation claims are predicated on past or existing facts, and not on promises or representations relating to future actions or conduct. Williams v. Edwards (1998), 129 Ohio App. 3d 116, 124, 717 N.E.2d 368. `Representations as to what will be performed or will take place in the future are regarded as predictions and are not fraudulent * * *.' Tibbs v. Natl. Homes Constr. Corp. (1977), 52 Ohio App. 2d 281, 286, 369 N.E.2d 1218. A representation relating to future conduct constitutes an actionable fraudulent misrepresentation only where an individual makes a promise concerning his future conduct and, at the time he makes it, he has no intention of keeping the promise. Williams at 124."
 {¶ 55} Our review of the record does not reveal any conduct on the part of Patricia warranting the voiding of two completed inter vivos gifts freely given to her by Thomas without consideration or condition. At the time Thomas made the gifts to Patricia, he did so without making them expressly conditioned on the continuation of their marriage. Thomas testified regarding his hopes and aspirations at the time he made the gifts based on what Patricia told him at various times during their marriage. There was no testimony that, at the time Thomas made the gifts to Patricia, he made them conditioned on her staying in the marriage until his death. *Page 21 
 {¶ 56} Conversely, there was no testimony that Patricia's general statements that she would stay with Thomas and care for him were made by Patricia at the time of the actual gifting by Thomas. Most importantly, there was no evidence presented at trial that at the time Patricia made these general statements to Thomas about remaining in the marriage, that she in fact had no intention of staying in the marriage. SeeWilliams at 124.
 {¶ 57} Patricia may well have had thoughts that she would not remain married to Thomas before and after she made these general statements to him to the effect that she would stay with him. However, in order for any such statements on her part to constitute fraudulent misrepresentation of an existing fact there must be proof that, at the time of her making any statement or representation, she had apresent intention not to remain married at the very time they were made and that the statements were made to Thomas.
 {¶ 58} Statements to Kathryn by Patricia as to how she felt about remaining in the marriage, made years before her acceptance of Thomas's gifts of settlement proceeds, are not evidence of any present intention on Patricia's part not to remain in the marriage at the time of the making of general statements to Thomas that she would stay with him in marriage.
 {¶ 59} Moreover, there was no evidence presented demonstrating that at the time Patricia made statements to the effect that she would stay with Thomas *Page 22 
in marriage, that she made such statements to him with the intention of inducing Thomas's gifts. A promise made with a present intention not to perform is a misrepresentation of an existing fact. As previously stated, we find no such promise made by Patricia at the time the gifts were made in the instant case. However, even if we were to find to the contrary, a person's promise made with present intention not to perform must be made with an intention to induce or mislead the other party into relying upon it.
 {¶ 60} We find no evidence that at the time Patricia made any statements to Thomas she made such statements with an intention of inducing Thomas into giving her approximately one-half of the settlement proceeds. See, Dunn Appraisal Co. v. Honeywell Information Systems,Inc. (C.A. 6, 1982), 687 F.2d 877, 882-883. As there was no promise made by Patricia with present intention not to perform in the future made at the time of the gifting with an intent to mislead or induce Thomas into making the gifts, the setting aside of two completed inter vivos gifts on the basis of fraud was improper as a matter of law. See Powers v.Pinkerton, Cuyahoga App. 76333, 2001-Ohio-4119, at 25 (absence of any such elements precludes finding of fraud).
 {¶ 61} Additionally, while we find no affirmative misrepresentation, actual or implied, on the part of Patricia, we also find no concealment of any intention which she was required to disclose at the time of Thomas's gifting of the one-half *Page 23 
of the Chrysler and Highland Heights settlement proceeds to her. We can find no authority requiring an obligation on the part of a donee-spouse to articulate possible future intentions or possible eventualities as to possible future developments in any marriage on a daily basis. Not only would it not be a gift if there were such requirements, but it would also be impossible for any spouse to do so.
 {¶ 62} In Cooper v. Smith, 155 Ohio App.3d 218, 2003-Ohio-6083, the court in an extensive analysis of various approaches as to gifts made in contemplation of marriage, adopted an approach that treats an engagement ring as a conditional gift but all other gifts as irrevocable inter vivos gifts unless they were expressly conditioned on the subsequent marriage. We find the following reasoning equally applicable to inter-spousal gifts made during marriage. We cite the following portion of the Cooper opinion, despite its reference to language regarding an engagement ring and engagement period, as equally applicable to a review of inter-spousal gifts made within a marriage.
 "Unlike the engagement ring, the other gifts have no symbolic meaning. Rather, they are merely `tokens of the love and affection which [the donor] bore for the [donee].' [quoting Albanese v. Indelicata (1947), 25 N.J. Misc.144]. As the Albanese Court noted: `Many gifts are made for reasons that sour with the passage of time.' *Page 24 
Unfortunately, gift law does not allow a donor to recover/revoke an inter vivos gift simply because his or her reasons for giving it have `soured.'" Cooper at ¶ 25.
 "Generally, a completed inter vivos gift is absolute and irrevocable. However, a donor may impose conditions on a gift so that if the conditions fail, the gift also fails. If we were to imply a condition on gifts given during the engagement period, then every gift the donor gave, no matter how small or insignificant, would be recoverable. Surely, the donor will give some gifts during the engagement period that are intended as absolute gifts. However, with an implied condition, the donor would have to expressly indicate he does not expect the gift back in order to make an absolute gift. Such a rule turns traditional gift law on its head. We believe the best approach is to treat gifts exchanged during the engagement period (excluding the engagement ring) as absolute and irrevocable inter vivos gifts unless the donor has expressed an intent that the gift be conditioned on the subsequent marriage." Cooper at ¶ 26.
 {¶ 63} The same rationale applies to inter-spousal gifts during marriage. The best approach is to treat gifts exchanged during marriage as absolute and irrevocable inter vivos gifts unless the donor-spouse has expressed an intent stated directly to the donee-spouse at the actual time of gifting that the gift is conditioned on the continuation of the marriage. In the instant case, Thomas did not impose conditions on the gifts at the time of their making by directly stating to Patricia that if stated conditions failed, the gifts would fail. Absent such a situation, traditional gift law prevails, and the completed inter vivos gifts made by Thomas were absolute and irrevocable. *Page 25 
 {¶ 64} For the foregoing reasons, and in light of the analysis inCooper, found equally applicable to inter-spousal gifts made without condition, we are compelled to vacate the trial court's determinations set forth herein, and its accompanying order voiding two completed inter vivos gifts, the approximately one-half settlement proceeds given to Patricia, items of separate property previously determined to belong to her, and transferring them to Thomas. Once the trial court made its determination that two complete inter vivos gifts of settlement proceeds in question were items of separate property belonging to Patricia, it had no authority to set them aside, based on the "factors" set forth in its final decree.
 {¶ 65} The "factors" set forth by the trial court do not constitute an exception as a matter of law to the mandatory distribution of separate property belonging to one spouse by virtue of completed inter vivos gifts required by R.C. 3105.171(D). The trial court had no authority to order the settlement proceeds of the Chrysler and Highland Heights lawsuits gifted to Patricia by Thomas back to him.
 {¶ 66} Accordingly, Patricia's first assignment of error is sustained.
 ASSIGNMENT OF ERROR TWO
 "THE TRIAL COURT FAILED TO AWARD THE REASONABLE AND APPROPRIATE SPOUSAL SUPPORT TO THE WIFE PURSUANT TO R.C. 3105.18." *Page 26 
 {¶ 67} The court in Crites v. Crites, Wood Nos. WD-04-034 and WD-04-042, 2004-Ohio-6162, stated:
 "[T]he language of R.C. 3105.18(C)(1)(a) is clear and unambiguous in stating that all sources of income, including property deemed to be separate property under R.C. 3105.171[,] is to be considered in deciding whether to award spousal support and, if awarded, in deciding the nature, amount, duration, and terms of payment of that award. Accord, Kilcoyne v. Kilcoyne (Feb. 29, 1996)), 8th Dist. No. 67926, 1996 Ohio App. LEXIS 804. See, also, Marcum v. Marcum (1996), 116 Ohio App. 3d 606, 611, 688 N.E.2d 1085; Donese v. Donese (April 10, 1998), 2d Dist. No. 97-CA-70, 1998 Ohio App. LEXIS 1493; Simmons v. Simmons (May 10, 1996), 11th Dist. No. 95-T-5237, 1996 Ohio App. LEXIS 1897." Woods at ¶ 22.
 {¶ 68} Because of our determination that the trial court improperly set aside two completed inter vivos gifts and failed to treat the completed gifts as Patricia's separate property, we find that the trial court must necessarily reassess the division of the Comella's marital estate. Thus, we find the issue of spousal support is not yet ripe for review. See Janosek at ¶ 145, citing, Spychalski and Burma v. Burma
(Sept. 29, 1994), Cuyahoga App. No. 65052. (Reassessment of marital estate includes reconsideration of spousal support.)
 {¶ 69} Accordingly, Patricia's second assignment of error is overruled.
 {¶ 70} ASSIGNMENT OF ERROR THREE
 "THE TRIAL COURT ERRED BY FINDING THAT ALL OF THE PROCEEDS FROM THE HUSBAND'S PERSONAL INJURY LAWSUITS WERE HIS SEPARATE PROPERTY, AND *Page 27 
THEREFORE FAILED TO PROPERLY IDENTIFY AND DIVIDE THE MARITAL ASSETS."
 {¶ 71} R.C. 3105.171(A)(6)(a)(vi) characterizes compensation for personal injury as the injured spouse's separate property, except for those amounts attributable to a loss of marital earnings and compensation for expenses paid from marital assets.
 {¶ 72} In response to Thomas's cross-appeal, which is addressed later in cross-assignment of error two, we determined that the trial court properly awarded Patricia a portion of Thomas's retained settlement proceeds as representing a resolution of her loss of consortium claim. Since Patricia's first assignment of error properly challenged the trial court's improper voiding of two completed inter vivos gifts, we find that in addition to recognizing Patricia's loss of consortium as a percentage of the ungifted portion of Thomas's settlement proceeds, the trial court on remand must also determine the extent to which those settlement proceeds retained by Thomas represent a loss of Thomas's wages.
 {¶ 73} The trial court must also on remand determine the portion of the ungifted settlement proceeds, if any, representing compensation for expenses paid from marital assets. *Page 28 
 {¶ 74} These items by virtue of R.C. 3105.171(A)(6)(a)(vi) are clearly marital assets and ultimately subject to equitable division between the parties under R.C. 3105.171(B). Janosek at ¶ 92.
 {¶ 75} Thus, Patricia's third assignment of error is sustained.
 ASSIGNMENT OF ERROR FOUR
 "THE TRIAL COURT FAILED TO CONDUCT AN INDEPENDENT REVIEW OF THE MAGISTRATE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW AS REQUIRED BY THE OHIO RULES OF CIVIL PROCEDURE."
 {¶ 76} When ruling on objections to a magistrate's decision, the trial court is required to make a full and independent judgment of the referred matter and should not adopt the findings of the magistrate unless the trial court fully agrees with them. DeSantis v. Soller
(1990), 70 Ohio App.3d 226, 232.
 {¶ 77} "A trial court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law."Janosek at ¶ 149. (Internal citations omitted.)
 {¶ 78} A review of the record herein demonstrates that the document submitted by Thomas's attorney, and adopted nearly verbatim by the trial court, contains some inaccurate findings and conclusions of law that are not supported by the record. (See assignments of error 1 and 3.) However, as we have already *Page 29 
vacated these portions of the trial court's judgment entry, we consider this argument moot for purposes of this opinion. See App. R. 12(A)(1)(c).
 {¶ 79} Therefore, Patricia's fourth assignment of error is overruled.
 {¶ 80} Thomas's cross-appeals, raising two assignments of error for our review. His assignments of error advance his position that the trial court erred in failing to incorporate in its final judgment entry his position regarding the effect of Patricia's conduct of entering into a relationship with another man in March of 2004, while married to Thomas. It is Thomas's contention that the trial court improperly failed to include in its final judgment entry a determination that Patricia's extramarital relationship voided not only her loss of consortium rights with regard to Thomas's personal injury settlements but also her claims for spousal support.
 {¶ 81} CROSS-ASSIGNMENT OF ERROR ONE
 "THE TRIAL COURT COMMITTED ERROR BY AWARDING PAT COMELLA TEN PERCENT OF THE PROCEEDS FROM THE CHRYSLER AND HIGHLAND HEIGHTS LAWSUITS AS COMPENSATION FOR HER LOSS OF CONSORTIUM CLAIMS."
 {¶ 82} The trial court stated in its final entry: "The court does not adopt Plaintiff's argument that Defendant's loss of consortium rights with regard to Plaintiff's personal injury cases should be voided because of her subsequent conduct. There is no doubt that Defendant suffered loss of consortium, as well as *Page 30 
pain and suffering due [to] the tortious conduct of the parties sued in personal injury and products liability cases."
 {¶ 83} R.C. 3105.171(A)(6)(a)(vi) specifically provides that "separate property" includes "compensation to a spouse for the spouse's personal injury." As Patricia's loss of consortium is a claim for her own direct injury, any settlement proceeds compensating her for that claim qualifies as her separate property. See Marcum v. Marcum (1996)116 Ohio App.3d 606.
 {¶ 84} Moreover, R.C. 3105.171(D) also provides that, except as otherwise provided in the statute, the court shall disburse a spouse's separate property to the owning spouse, and if a court does not do so, it shall make written findings of fact stating the factors it considered in making the determination that the spouse's separate property should be distributed otherwise.
 {¶ 85} A trial court's determination of loss of consortium as separate property is a finding of fact reviewed under a manifest weight of the evidence standard. "Appellate review of a trial court's classification of property as marital or separate is based on whether the determination is supported by the manifest weight of the evidence." James at 684.
 {¶ 86} We will not disturb the trial court's award of loss of consortium to Patricia as we find it to be supported by competent, credible evidence. *Page 31 
 {¶ 87} As the "manifest weight of the evidence" standard is highly deferential, even "some" competent, credible evidence is sufficient to support the trial court's decision in this regard. See Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 88} For that reason, Thomas's first cross-assignment of error is overruled.
CROSS-ASSIGNMENT OF ERROR TWO
 "THE TRIAL COURT ERRED BY AWARDING PAT COMELLA SPOUSAL SUPPORT IN THE AMOUNT OF $2,000 PER MONTH, BASED ON MS. COMELLA'S COHABITATION WITH DAVID DINGER."
 {¶ 89} The trial court stated in its final entry that "[t]he court finds that Plaintiff's position is that Defendant should be denied spousal support due to her relationship with David Dinger, which arguably constitutes cohabitation under Ohio Law. The court finds that Defendant's contributions toward Dingers [sic] expenses are not significant enough to establish cohabitation."
 {¶ 90} Because of our determination that the trial court improperly set aside two completed inter vivos gifts and failed to treat them as Patricia's separate property requiring reassessment of the division of the Comella's marital estate, we find the issue of spousal support is not yet ripe for review. Janosek at ¶ 145.
 {¶ 91} Accordingly, Thomas's second assignment of error is overruled. *Page 32 
Judgment affirmed in part, reversed in part and remanded.
It is ordered that appellant and appellee share equally in the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the domestic relations division
to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27
of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and MELODY J. STEWART, J., CONCUR
[1] Homedays is a Highland Heights community event. *Page 1